# Mager v. Bedminster Township Zoning Board

*Cyril L. Weston*, for plaintiff.

*Robert Mountenay*, for defendant.

FULLAM, J., February 14, 1966.—At an earlier stage of this litigation, by opinion and order entered December 18, 1964 (14 Bucks 337), the appeal was remanded to the zoning board of adjustment for further proceedings to determine whether or not appellant's two four-unit apartment buildings constituted a permitted use under the terms of the Bedminster Township zoning ordinance. As indicated in our earlier opinion, the determination of this issue involved the further question of whether appellant's property constituted a "farm" or a "subdivision" within the meaning of the ordinance.

Pursuant to the remand order, the zoning board of adjustment held a further hearing, at which it was stipulated by counsel that appellant's property constitutes a "farm", and not a subdivision; whereupon, the zoning board of adjustment reaffirmed its original position that appellant's buildings were not permitted under the terms of the ordinance, and that his application for a building permit should be refused. Appellant has again brought the matter to this court.

The premises are located in an A-1 district. The authorized uses in such districts are set forth in section 21.01 of the ordinance, and include:

"a) Agriculture in accordance with the provisions of Section 21.20.

". . .

"d) Usual Farm Buildings and Dwellings, including tenant house or accessory dwelling".

Section 21.20 of the ordinance reads as follows:

"21.20 *Farm*. Agriculture, Farmhouses, and Usual Farm Buildings shall be permitted without restriction except as follows:

". . .

"b) No farmhouse shall be constructed closer than 85 feet to such lines.

". . .

"d) The number of dwellings permitted on a farm shall not be limited, providing density does not exceed ½ dwelling per acre . . ."

Counsel for the township argue, with considerable merit, that the words "Usual Farm Buildings and Dwellings" in section 21.01 (d) obviously mean usual farm buildings and usual *farm* dwellings, and that it would be most unreasonable to interpret the ordinance language literally so as to permit apartment houses in agricultural districts. Counsel further points out that the provisions of subsection (d) of 21.20, that "the number of dwellings permitted on a farm shall not be limited . . .", have no application, since these subsections are merely restrictions and limitations upon the general language of permission at the beginning of section 21.20, and do not create or extend any permissive uses not already granted by the general language.

These arguments point up the two key questions involved: (1) Does section 21.01 (d) of the ordinance permit "dwellings" in general, or merely "usual farm dwellings"? (2) Are multi-family apartment buildings permitted under the language of section 21.20, which provides: ". . . Farmhouses, and Usual Farm Buildings shall be permitted without restrictions . . ."? If either of these questions is answered in the affirmative, the appeal must be sustained.

It is our conclusion that, by reason of the unusual definitions provided in this ordinance, the answer to the second question is in the affirmative. While at first blush it seems farfetched to classify appellant's build-

ings as "farmhouses", the ordinance leaves us no alternative. The ordinance provides:

"12.00 *Language Interpretations*

"For the purpose of this ordinance certain words shall have the meaning assigned to them, as follows:

". . .

"12. *Farm.* Land in separate ownership used for agricultural or residential purposes . . .

"13. *Farmhouse.* A 'farmhouse' is any dwelling incidental to the operation of a farm as defined herein. The word 'farmhouse' includes 'tenant house' ".

By defining a farm as land used "for agricultural *or residential* purposes", and by defining a farmhouse as "any dwelling incidental to the operation of *a farm as defined herein*", the framers of this ordinance seem to have adopted a very broad concept of the term "farmhouse"; and by providing, in section 21.20, that such buildings shall be permitted without restriction in agricultural districts, they seem to have negated any reason for denying appellant's permit.

We recognize that the supervisors may not have intended the foregoing result, and it may be that under some circumstances the court would be justified in giving the term "farmhouse" its usual and ordinary meaning, notwithstanding the specific definition set forth in the ordinance. To adopt such practice in the present case, however, would raise serious questions as to the constitutionality of the ordinance itself. We gravely doubt that it is within the legitimate police power of the township supervisors to permit unlimited numbers and unlimited concentrations of farmhouses within a district where other dwellings are severely restricted, merely because the occupants happen to be farmers. To ascribe such an intention to the supervisors seems no less farfetched than the broad definition of "farmhouse", which the literal reading of the ordinance requires.

A fundamental requirement for any zoning regulation is that it must be definite and certain; the ordinance restrictions on the uses of private property must be unambiguously expressed: Taylor v. Moore, 303 Pa. 469 (1931). See also Cleaver v. Board of Adjustment, 414 Pa. 367 (1964), and the cases there cited at page 374. It certainly cannot be said that appellant's apartment buildings are so clearly prohibited by the Bedminster Township Zoning Ordinance as to justify our upholding the zoning officer's cease and desist order.

## Order

And now, February 14, 1966, for the reasons set forth in the foregoing opinion, the within appeal is sustained; the decision of the Zoning Board of Adjustment of Bedminster Township is reversed, and the zoning officer is directed to issue the necessary permits upon compliance by appellant with formal and procedural requirements. Costs on respondent.